## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Hubbard Media Group, LLC, a Delaware limited liability company, and ReelzChannel, LLC, a Delaware limited liability company, | Civil Action No. |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| Instagram, Inc., a Delaware corporation, Instagram, LLC, a Delaware limited liability company, and Facebook, Inc., a Delaware corporation, | |
| Defendants. | |

## <u>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF</u>

Plaintiffs Hubbard Media Group, LLC ("HMG") and ReelzChannel, LLC ("REELZ") (collectively, "Plaintiffs") bring this action against Defendants Instagram, Inc., Instagram, LLC, (together, "Instagram") and Facebook, Inc. ("Facebook") (collectively, "Defendants") for trademark infringement, trademark dilution, and unfair competition in violation of 15 U.S.C. § 1051 *et seq.* (also referred to as the "Lanham Act"), and related claims under Minnesota law. Defendants' infringing activities are causing Plaintiffs irreparable harm and that harm will continue absent injunctive relief. In support of their claims, Plaintiffs allege as follows:

### INTRODUCTION

1.      Plaintiffs REELZ and HMG are part of the Saint Paul, Minnesota-based Hubbard Broadcasting, Inc. group of companies ("Hubbard"). In a media landscape increasingly dominated by corporate giants, Hubbard is a family-owned success story.

Nearly a century old, Hubbard traces its Minnesota roots to local radio broadcasts starting in 1923.  Hubbard began television broadcasting in 1948, when the medium was still in its infancy.  In the ensuing decades, Hubbard has thrived in the media space through many challenging cycles of change in industry, technology, and culture, including in recent years, an unprecedented consolidation in the media marketplace.

2.      An important part of Hubbard's success has been its consistent investment in distinctive and valuable trademarks to distinguish itself in a converging media space, such as Plaintiffs' REELZ® trademarks that are at the heart of this case.

3.      Launched on September 27, 2006, the REELZ® network is now in over 50 million homes on satellite and cable channels across the United States, and reaches millions more through all platforms of distribution, including streaming and on-demand and over-the-top (OTT) services on all types of devices, including mobile.  REELZ offers original programming including "Hollywood Scandals," "Autopsy:  The Last Hours Of…," "Behind Closed Doors with Natalie Morales," "Breaking the Band," "Hollywood 911," and "Copycat Killers."

4.      Just last week, Defendants Facebook and Instagram launched a new media service called "Reels."  Much fanfare has accompanied the rollout, and the media space has been all abuzz about "Reels."  Defendants even accelerated their originally-planned launch date by several weeks, bringing "Reels" into the homes of a largely-captive American audience during the pandemic.

5.      Defendants' use of "Reels" as the banner name of their new media service infringes Hubbard's valuable REELZ® trademarks.  This should come as no surprise to Defendants — they knew about Hubbard's trademarks before choosing "Reels" over

innumerable other options.  Defendants' use of "Reels" usurps the goodwill embodied in Hubbard's REELZ® trademarks and is likely to confuse consumers.  Indeed, at least one major publication has already mistakenly referred to "Reelz," and included a link to the REELZ Facebook page, in an announcement meant to refer to *Defendants'* infringing use of "Reels."  Attached as **Exhibit A** is a true and correct copy of this article, available at https://www.forbes.com/sites/toddwasserman/2020/07/31/ignore-or-explore-how-should-marketers-treat-tiktok/#69521ef524de.

6.      Five of Plaintiffs' registered marks have become incontestable by virtue of Plaintiffs' longstanding use of the marks.  Plaintiffs' exclusive right to use them is beyond dispute.  Unless stopped, Facebook's and Instagram's pervasive use of "Reels" will completely swamp the distinctive brand identity that Plaintiffs have built up for their own, pre-existing REELZ® media services.  Plaintiffs therefore have no realistic choice except to file this lawsuit.

## THE PARTIES

7.      HMG and REELZ are part of the group of companies that constitute Hubbard Broadcasting, Inc., a Saint Paul, Minnesota-based, family-owned and family-operated broadcasting and media company.  Hubbard's media operations in the Twin Cities region date back to 1923 beginning with WAMD ("Where All Minneapolis Dances") radio broadcasts of live dance music and other local programming.  Hubbard began television broadcasts in 1948.  A true and correct copy of all television and radio stations owned by Hubbard is attached hereto as **Exhibit B**.

8.      Plaintiff HMG is a limited liability company organized under the laws of the State of Delaware and with a principal place of business at 3415 University Avenue,

Saint Paul, Minnesota 55114.  HMG owns numerous U.S. federal trademark registrations for the REELZ® trademarks, many of which have become incontestable by operation of law.  True and correct copies of the REELZ® trademark registrations are attached hereto as **Exhibit C**.

9.      Plaintiff REELZ is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 5650 University Blvd SE, Albuquerque, NM 87106.

10.     Defendant Instagram, Inc. is a Delaware corporation with a principal place of business in Menlo Park, California.  On information and belief, Defendant Instagram, Inc. operates and owns the website www.instagram.com, and markets, offers, and distributes applications such as the Instagram application throughout the United States, including in this District.

11.     Defendant Instagram, LLC is a Delaware limited liability company with its principal place of business in Menlo Park, California.  On information and belief, Defendant Instagram, LLC owns U.S. Trademark Application Serial No. 88925610 for REELS (word mark) (the "REELS Mark") seeking to cover goods and services in International Class 9 ("Computer software; Computer software for modifying audio, video, and audio-visual content; Computer software for modifying and enabling transmission of video, audio, audio visual and video content and data; Computer software for the collection, managing, editing, organizing, modifying, transmission, sharing, and storage of data and information; Computer software for social networking and interacting with online communities; Computer software for processing images, graphics, audio, video, and text; Downloadable computer software for finding content and content

publishers, and for subscribing to content"), International Class 38 ("Video sharing services, namely, electronic transmission of videos and audio visual content among internet users; Peer-to-peer video and data sharing services, namely, electronic transmission of digital video files, graphics and audio content among internet users"), International Class 41 ("Entertainment services; Entertainment services, namely, providing access to interactive electronic and online databases of user-defined content, third-party content, video, audio, visual, and audio-visual material in the field of general interest; Video sharing services"), International Class 42 ("Computer software that gives users the ability to upload, edit, and share videos and audio-visual content; Computer software for use in taking, recording and editing videos; Providing online facilities that give users the ability to upload, modify and share videos; Computer software for viewing and interacting with a feed of videos, audio, audio-visual and video content and associated text and data"), and International Class 45 ("Online social networking services") (the "Infringing Application").   A true and correct copy of the Infringing Application is attached hereto as **Exhibit D**.  On information and belief, Defendant Instagram, LLC uses, advertises, markets, and promotes "REELS" in connection with some or all of the foregoing goods and services throughout the United States, including in this District.

12.     Defendant Facebook, Inc. is a Delaware corporation with its principal place of business in Menlo Park, California.  On information and belief, Defendants Instagram, Inc. and Instagram, LLC are wholly-owned subsidiaries of Defendant Facebook, Inc.  On information and belief, Defendant Facebook, Inc. hosts Defendants Instagram, Inc. and Instagram, LLC's videos and photos on its data centers.  On information and belief, there is overlap among Defendants' finance functions and other operations.  On information and

belief, one or more of Defendant Facebook, Inc.'s employees perform work on behalf of, and/or in support of the products or services offered by, Defendants Instagram, Inc. and Instagram, LLC.

13.     On information and belief, each of the Defendants directly and/or indirectly develops, designs, distributes, markets, offers to sell, and/or sells infringing products and services in the United States, including in this District, and otherwise purposefully directs infringing activities to this District in connection with the Instagram application and use of the infringing REELS Mark.

14.     On information and belief, and as further explained below, Defendants have been and are acting in concert, and are otherwise liable jointly, severally, or otherwise for a right of relief related to or arising out of the same transaction, occurrence, or series or transactions or occurrences related to the use, sale, offering for sale, promotion, marketing, advertising goods and services under the infringing REELS Mark in this District.   In addition, this action involves questions of law and fact that are common to all Defendants.

## FACTUAL BACKGROUND

### *Plaintiffs' REELZ® Trademarks*

15.     Plaintiff REELZ is the operating company for the REELZ® network, which launched on September 27, 2006.  The REELZ® network is now on satellite and cable channels that reach more than 50 million viewers across the United States, and available to over 70 million more viewers as part of a package offered by their satellite or cable provider.  The REELZ® network is also available to millions more on smart TVs and other devices, including mobile, through subscription and ad-based video on-demand streaming services and OTT services, such as the REELZ NOW® service and third-party

services like Amazon, Roku, Pluto, Sling, Samsung Smart TV (and other smart TV brands), Philo, XUMO, Tubi, YouTube, and many more.  As a result of developments in technology, viewers are able to access REELZ® media services from anywhere, at any time, on multiple devices, including computers, tablets, smartphones, and smart TVs.

16.     Since at least as early as September 2006, Plaintiffs have used the REELZ® trademarks continuously in interstate commerce throughout the United States.  In the intervening years, REELZ® has become a leading brand for independent cable and satellite general entertainment that is home to fact-based entertainment, television events, miniseries, movies, and series featuring big stories and big stars.

17.     Plaintiffs operate the website www.reelz.com, where the REELZ® channel and the REELZ® trademarks are extensively promoted, marketed, and advertised. Plaintiffs invest heavily in an effort to be included in every new service that will benefit the REELZ® brand.  It is crucial to Plaintiffs' continued success in an ever-changing and evolving digital environment to distinguish and differentiate the REELZ® brand from the constant stream of new services and competitors, as a linear network, an on-demand service, and as part of any other media platforms on any and all devices.

18.     In recognition of the value and importance of its REELZ® trademarks, and to put others on notice of those rights, HMG owns the following U.S. federal trademark registrations (the "REELZ® Registrations"):

| Mark | Registration No. | Registration Date and Dates of First Use | Goods/Services |
|---|---|---|---|
| REELZ (word mark) | 4094182 | Registered: January 31, 2012 | Class 38: Television, digital television, cable television, and satellite television broadcasting |

| Mark | Registration No. | Registration Date and Dates of First Use | Goods/Services |
|---|---|---|---|
| | | Date of First Use: December 5, 2011<br><br>Date of First Use in Commerce: December 5, 2011 | and transmission services; broadcasting and transmission of television programs via the Internet.<br><br>Class 41: Television, digital television, cable television, and satellite television programming; programming on a global computer network, namely, programming on the Internet; production of television programs; distribution of television programs for others; providing entertainment information and television programs in the field of movies and cinema over a global computer network. |
| REELZ (design)<br>**∷REELZ** | 4400190 | September 10, 2013<br><br>Date of First Use: December 5, 2011<br><br>Date of First Use in Commerce: December 5, 2011 | Class 38: Television, digital television, cable television, and satellite television broadcasting and transmission services; broadcasting and transmission of television programs via the Internet.<br><br>Class 41: Television, digital television, cable television, and satellite television programming; programming on a global computer network, namely, programming on the |

| Mark | Registration No. | Registration Date and Dates of First Use | Goods/Services |
|------|------------------|-------------------------------------------|----------------|
| | | | Internet; production of television programs; distribution of television programs for others; providing entertainment information and ongoing television programs in the field of movies and cinema over a global computer network. |
| REELZ NOW (word mark) | 5209740 | May 23, 2017<br><br>Date of First Use: March, 31, 2017<br><br>Date of First Use in Commerce: March 31, 2017 | Class 9: Computer software application for mobile devices for use in the delivery and viewing of video recordings, audio recordings, television programs, and movies.<br><br>Class 38: Television and digital television broadcasting and transmission services; broadcasting and transmission of television programs via the internet.<br><br>Class 41: Television and digital television programming; programming on a global computer network, namely, programming on the Internet; production of television programs; distribution of television programs for others. |
| REELZCHANNEL (word mark) | 3337236 | November 13, 2007 | Class 38: Television, digital television, cable television, and satellite |

| Mark | Registration No. | Registration Date and Dates of First Use | Goods/Services |
|---|---|---|---|
| | | Date of First Use: September 27, 2006<br><br>Date of First Use in Commerce: September 27, 2006 | television broadcasting and transmission services; broadcasting and transmission of television programs via the Internet.<br><br>Class 41: Television, digital television, cable television, and satellite television programming; programming on a global computer network, namely, programming on the Internet; production of television programs; distribution of television programs for others; providing entertainment information and television programs in the field of movies and cinema over a global computer network. |
| REELZ CHANNEL (design)<br><br>●●REELZ<br>●● CHANNEL | 3264014 | July 17, 2007<br><br>Date of First Use: September 27, 2006<br><br>Date of First Use in Commerce: September 27, 2006 | Class 38: Television, digital television, cable television, and satellite television broadcasting and transmission services; broadcasting and transmission of television programs via the Internet.<br><br>Class 41: Television, digital television, cable television, and satellite television programming; programming on a global computer network, namely, |

| Mark | Registration No. | Registration Date and Dates of First Use | Goods/Services |
|---|---|---|---|
| | | | programming on the Internet; production of television programs; distribution of television programs for others; providing entertainment information and television programs in the field of movies and cinema over a global computer network. |
| REELZ CHANNEL (design)  | 3264198 | July 17, 2007<br><br>Date of First Use: September 27, 2006<br><br>Date of First Use in Commerce: September 27, 2006 | Class 38: Television, digital television, cable television, and satellite television broadcasting and transmission services; broadcasting and transmission of television programs via the Internet.<br><br>Class 41: Television, digital television, cable television, and satellite television programming; programming on a global computer network, namely, programming on the Internet; production of television programs; distribution of television programs for others; providing entertainment information and television programs in the field of movies and cinema over a global computer network. |

19.     Plaintiffs' U.S. Reg. Nos. 4094182, 4400190, 3337236, 3264014, and 3264198 have all become incontestable under Lanham Act, 15 U.S.C. § 1065, and are therefore conclusive evidence of Plaintiffs' exclusive right to use the REELZ® trademarks in the United States for all goods and services referenced therein (the "Incontestable Registrations").

20.     In addition to the REELZ® Registrations, Plaintiffs have significant and protectable common law rights in the REELZ® trademarks.

21.     As a result of the long and continuous use and substantial promotion of the REELZ® trademarks, Plaintiffs have established valuable goodwill and recognition in and to the REELZ® trademarks.

22.     Because of their distinctiveness and Plaintiffs' extensive use of the REELZ® trademarks over many years, the REELZ® trademarks have gained significant recognition and garnered extensive goodwill in connection with Plaintiffs' goods and services.

23.     Due to the long, continuous, and exclusive use of the REELZ® trademarks by Plaintiffs, the REELZ® trademarks have acquired secondary meaning and are associated with Plaintiffs in the minds of customers.

24.     Plaintiffs have invested significant resources in developing and acquiring high-quality programming for its tens of millions of viewers, and have spent over USD $100 million in promoting, marketing, and advertising to build the strength and value of the REELZ® trademarks.  This includes both Plaintiffs' advertising spend for traditional cable and satellite television, as well as advertising with streaming (OTT) and other service providers.

25.     Plaintiffs actively promote, market, and advertise the REELZ® trademarks on social media, including Facebook, Instagram, and Twitter.  Indeed, Plaintiffs expend substantial resources on social media and digital advertising and have routinely made significant ad buys on Defendants' Facebook and Instagram platforms, among other digital advertising investments.  Plaintiffs maintain both a REELZ® Instagram account and a REELZ® Facebook page:





26.    A representative post from Plaintiffs' REELZ® Instagram account appears as follows:



27.     Plaintiffs' REELZ® network is one of the last truly independent television

networks remaining in today's media landscape, dominated by corporate giants, and has

gained a reputation as an independent voice, picking up and exhibiting content that more

mainstream networks felt was "too hot to touch."  Most notably, these have included "The

Kennedys," "JFK: The Smoking Gun," "Miss USA Pageant 2015," "The Kennedys: After Camelot," and "American Trial: The Eric Garner Story."

28.     Plaintiffs have capitalized on their reputation for independence by creating and investing in an independent news platform under the banner "Independence Happens Here®."  Plaintiffs operate the REELZ® website www.independencehappenshere.com, which highlights the importance of independent businesses and aims to keep freedom of thought and innovation alive:



29.     Plaintiffs' REELZ® trademarks are recognized by consumers, businesses, and the news media.

30.     As a result of the foregoing, the REELZ® trademarks are famous and highly distinctive, and are widely recognized by the general consuming public of the United States as a designation of a single origin, namely, Plaintiffs.

31.     Plaintiffs' REELZ® trademarks became famous well prior to Defendants' use of the infringing REELS Mark.

32.     Defendants' use of the infringing REELS Mark dilutes the distinctive quality of the REELZ® trademarks.

### *Defendants' Egregious Infringement of the REELZ® Trademarks*

33.     Notwithstanding Plaintiffs' longstanding use of their well-known REELZ® trademarks, Defendants adopted and last week began nationwide use of the infringing REELS Mark.  A true and correct copy of the announcement of the launch of Instagram's "REELS" posted on August 5, 2020 is attached hereto as **Exhibit E**.  True and correct copies of reports regarding the launch of "REELS" posted by various news and media publications and outlets are attached as **Exhibit F**.

34.     Defendants are an enormous, global media conglomerate that owns and operates, *inter alia*, the social media platform Instagram, available at the website www.instagram.com and through the Instagram mobile application.  Defendants constitute the world's largest social media network, with more than 3 billion people using one of its apps monthly.  On information and belief, altogether, Facebook holds 23% of the U.S. digital advertising market, and brought in almost $70 billion in advertising last year—99% of its total revenue.

35.     Plaintiffs, despite their own national renown and substantial market presence, now find themselves in the shadow of a titan who has chosen to take for itself Plaintiffs' valuable brand identity.

36.     Defendants use the infringing REELS Mark in connection with video and other media content, allowing users of Instagram to create videos that can be shared within and without the Instagram application.  The infringing REELS mark appears prominently in the Instagram user interface:

 




37.    Defendant Instagram, LLC filed the Infringing Application for REELS as a

standalone word mark, identifying numerous overlapping goods and services with those

identified in Plaintiffs' REELZ® Registrations:

| Infringing Application | Plaintiffs' Registration |
|---|---|
| Class 9: Computer software; Computer software for modifying audio, video, and audio-visual content; Computer software for modifying and enabling transmission of video, audio, audio visual and video content and data; Computer software for the collection, managing, editing, | Class 9: Computer software application for mobile devices for use in the delivery and viewing of video recordings, audio recordings, television programs, and movies.<br><br>(*See* U.S. Reg. No. 5209740). |

| Infringing Application | Plaintiffs' Registration |
|---|---|
| organizing, modifying, transmission, sharing, and storage of data and information; Computer software for social networking and interacting with online communities; Computer software for processing images, graphics, audio, video, and text; Downloadable computer software for finding content and content publishers, and for subscribing to content | |
| Class 38: Video sharing services, namely, electronic transmission of videos and audio visual content among internet users; Peer-to-peer video and data sharing services, namely, electronic transmission of digital video files, graphics and audio content among internet users | Class 38: Television, digital television, cable television, and satellite television broadcasting and transmission services; broadcasting and transmission of television programs via the Internet.<br><br>(*See e.g.*, U.S. Reg. No. 4094182). |
| Class 41: Entertainment services; Entertainment services, namely, providing access to interactive electronic and online databases of user-defined content, third-party content, video, audio, visual, and audio-visual material in the field of general interest; Video sharing services | Class 41: Television, digital television, cable television, and satellite television programming; programming on a global computer network, namely, programming on the Internet; production of television programs; distribution of television programs for others; providing entertainment information and television programs in the field of movies and cinema over a global computer network.<br><br>(*See e.g.*, U.S. Reg. No. 4094182).<br><br>Class 41: Television and digital television programming; programming on a global computer network, namely, programming on the Internet; production of television programs; distribution of television programs for others.<br><br>(*See* U.S. Reg. No. 5209740). |

38.     On information and belief, at the time of Defendants' adoption of the infringing REELS Mark, Defendants were aware of Plaintiffs' REELZ® trademarks, including without limitation the REELZ® Registrations.

39.     Plaintiffs' rights in its REELZ® trademarks predate any use of the infringing REELS Mark by any of the Defendants.  As such, Plaintiffs indisputably have priority, and Plaintiffs are the senior user of the REELZ® mark with rights superior to any rights Defendants may have in the infringing REELS Mark.

40.     Plaintiffs' REELZ® trademarks and the infringing REELS Mark are identical with respect to sound, as they are phonetic equivalents.  Plaintiffs' REELZ® trademarks and the infringing REELS Mark are virtually identical with respect to appearance, meaning, and overall commercial impression.  Indeed, on July 28, 2020, the Office of the Deputy Commissioner for Trademark Examining Policy at the United States Patent and Trademark Office accepted Plaintiffs' Letter of Protest that was lodged against the Infringing Application.  A true and correct copy of the Letter of Protest Memorandum is attached hereto as **Exhibit G**.

41.     Plaintiffs' goods and services in connection with its REELZ® trademarks are identical in purpose, or at least closely related to, the goods and services in which Defendants use and intend to use the infringing REELS Mark.

42.     Plaintiffs and Defendants offer their respective products and services to the public at large, and target the same general types of consumers.

43.     In light of the nearly-identical nature of the parties' respective marks, Defendants' activities present a substantial risk of irreparable harm to Plaintiffs' ability to

distinguish the REELZ® brand in the marketplace, and particularly in the rapidly evolving digital landscape that is increasingly dominated by a handful of giants.

44.     Plaintiffs' and Defendants' mobile applications are both available for download at the Apple App Store and Android App Store.

45.     Plaintiffs and Defendants promote their respective goods and services through social media, their own websites, and through other media channels.

46.     On information and belief, Defendants adopted the infringing REELS Mark and filed the Infringing Application in bad faith, with knowledge of Plaintiffs' use of the REELZ® trademarks and with knowledge of the long-standing REELZ® Registrations, with the intent to profit from the distinctiveness of, and the goodwill in, the nearly identical REELZ® trademarks for use with identical, or at least closely related, goods and services.

47.     Defendants' use of the infringing REELS Mark is likely to cause confusion, mistake, and to deceive third parties as to the affiliation, connection, or association of Defendants' goods and services with Plaintiffs.

48.     Likelihood of confusion is enhanced by the fact that Defendants' infringing REELS Mark and Plaintiffs' REELZ® trademark are virtually identical, and because Defendants' goods and services are identical to, or closely related to, Plaintiffs' goods and services, and because such goods and services will be marketed and offered via similar channels of trade.

49.     Defendants are not affiliated or connected with Plaintiffs and have not been endorsed or sponsored by Plaintiffs, nor have Plaintiffs approved any of the goods or services offered or intended to be offered by Defendants under the infringing REELS Mark.

50.     Defendants have never sought or obtained Plaintiffs' permission to use the infringing REELS Mark, nor have Plaintiffs approved any of the goods or services offered by Defendants under the infringing REELS Mark.

51.     Based on the facts set forth above, the conduct of Defendants is clearly deliberate and intentional, and is specifically intended to enrich Defendants and harm and damage Plaintiffs by taking advantage of the goodwill Plaintiffs have established over the last fourteen years in the REELZ® trademarks in the United States.  Defendants have willfully infringed upon Plaintiffs' valuable trademark rights.

***Marketplace Confusion Caused by Defendants' Use of the Infringing REELS Mark***

52.     Despite its launch just last week in the United States, the likelihood of confusion is already evident in the marketplace:











53.     Defendants' continued use of the infringing REELS Mark is likely to cause confusion as to the source and origin of Defendants' goods and services and is likely to cause, confusion, mistake, or deception as to the source or sponsorship of Defendants' goods and services.   Further, Defendants' use of the infringing REELS Mark falsely

suggests a connection with Plaintiffs' REELZ® channel, and misleads the public into believing that Defendants' goods and services emanate from, are approved or sponsored by, or are in some way connected with Plaintiffs.

54.    Defendants' use of the infringing REELS Mark in connection with substantially identical, or at least closely related, goods and services falsely conveys that Plaintiffs are affiliated with Defendants or vice versa, or otherwise misrepresents the nature, characteristics, and qualities of Defendants' goods and services.

55.    Current and prospective customers looking for Plaintiffs and their goods and services and encountering Defendants' infringing REELS Mark are likely to be, and likely have already been, confused or deceived as to the source of such goods and services.

56.    Defendants have intentionally undertaken the acts alleged herein without Plaintiffs' permission or authorization and have caused, and if not stopped will continue to cause, consumer confusion, mistake, and/or deception.

57.    On information and belief, Defendants' adoption and use of the infringing REELS Mark is a deliberate, willful, and intentional attempt to trade unlawfully on the goodwill associated with the REELZ® trademarks.

58.    Defendants' activities described herein have caused, and if not stopped will continue to cause, irreparable harm, and significant injury to Plaintiffs.

## JURISDICTION AND VENUE

59.    This is an action for damages and injunctive relief for trademark infringement, trademark dilution, and unfair competition in violation of 15 U.S.C. § 1051 *et seq*. (also referred to as the "Lanham Act"), and related claims under Minnesota state laws.

60.     This Court has jurisdiction over this case under 28 U.S.C. §§ 1331 & 1338 and 15 U.S.C. § 1121(a) because Plaintiffs' claims arise under the Lanham Act, 15 U.S.C. §1051 *et seq*.  Jurisdiction over the state law claims is also appropriate under 28 U.S.C. § 1367(a) because those claims are substantially related to the federal claims such that they form part of the same case or controversy.

61.     This Court has personal jurisdiction over Defendants Instagram, Inc. and Instagram, LLC under Minnesota law, including Minnesota's long-arm statute, Minn. Stat. § 543.19, and Federal Rule of Civil Procedure 4, in part because such defendants do continuous and systematic business in this District, including by providing infringing products and services to the residents of this District that such defendants knew would be used within this District, and solicit and transact business in this District, including but not limited to through the website at www.instagram.com and the Instagram application marketed, offered, and distributed to and utilized by users of mobile devices in this District and throughout the State of Minnesota, as well as by virtue their infringing use of the REELS Mark in this District and throughout the State of Minnesota.

62.     In particular, Defendants Instagram, Inc. and Instagram, LLC have committed and continue to commit acts of trademark infringement, dilution, and unfair competition in violation of the Lanham Act, and have made, used, promoted, marketed, advertised, distributed, sold, offered for sale, and/or imported infringing goods and services in the State of Minnesota, including in this District, and engaged in infringing conduct within and directed at this District.  For example, Defendants Instagram, Inc. and Instagram, LLC have purposefully and voluntarily placed the Instagram application into the stream of commerce with the expectation that its infringing products and services will

be used in this District.  The infringing Instagram application has been and continues to be distributed to and used in this District.  Defendants Instagram, Inc. and Instagram, LLC's acts are causing injury to Plaintiffs, including within this District.

63.     This Court has personal jurisdiction over Defendant Facebook, Inc. under Minnesota law, including Minnesota's long-arm statute, Minn. Stat. § 543.19, and Federal Rule of Civil Procedure 4, in part because it does continuous and systematic business in this District, including by directly and indirectly providing infringing goods and services to the residents of this District that it knew would be used within this District, and solicits and transacts business in this District, including but not limited to through the website at www.instagram.com and the Instagram application marketed, offered, and distributed to and utilized by users of mobile devices in this District and throughout the State of Minnesota, as well as by virtue of its infringing use of the REELS Mark in this District and throughout the State of Minnesota.

64.     On information and belief, Defendants Instagram, Inc. and Instagram, LLC are wholly-owned subsidiaries of Defendant Facebook, Inc.  On information and belief, Defendant Facebook, Inc. does not separately report revenue from Instagram in its filings to the Securities Exchange Commission, but rather reports combined revenue from its various products including Facebook and Instagram.  On information and belief, Facebook and Instagram are viewed in the market as an integrated package with each of the products and services benefitting from cross-promotion and substantial net effects.

65.     On information and belief, Defendant Facebook, Inc. not only owns, but also operates Defendants Instagram, Inc. and Instagram, LLC, such operation including the cooperative development, improvement, support, and/or marketing of their respective

products and services.  On information and belief, Defendants' respective Facebook and Instagram products are integrated with one another from a technical standpoint including, but not limited to, Instagram users may double-post Instagram stories directly to Facebook from the Instagram application.

66.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) at least because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendants have committed acts of infringement in this District and are causing harm within this District.

## COUNT I

### *Federal Trademark Infringement under 15 U.S.C. § 1114*

67.     Plaintiffs reallege and incorporate herein the allegations contained in Paragraphs 1 to 66 of this Complaint.

68.     The foregoing acts of Defendants, undertaken without authorization from Plaintiffs and with knowledge that the infringing REELS Mark and Plaintiffs' REELZ® Registrations are likely to be confused, are intended to cause and likely to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether the Defendants' goods and services originate from, or are affiliated with, sponsored by, or endorsed by Plaintiffs constitute trademark infringement in violation of 15 U.S.C. § 1114.

69.     Defendants have acted with knowledge of Plaintiffs' superior trademark rights in its REELZ® Marks (as evidenced by the REELZ® Registrations, and which are conclusively established with respect to the Incontestable Registrations) and to unfairly benefit from the goodwill symbolized thereby.

70.     The harmful actions of Defendants, if not enjoined, will continue.  Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the REELZ® Registrations and injury to Plaintiffs' business and reputation.  Plaintiffs are therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

71.     Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to recover damages in an amount to be determined at trial, profits made by Defendants in connection with their infringing activities, and the costs of this action.  Furthermore, the actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiffs to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II

### *Federal Unfair Competition and Infringement under 15 U.S.C. § 1125(a)*

72.     Plaintiffs reallege and incorporate herein the allegations contained in Paragraphs 1 to 71 of this Complaint.

73.     The foregoing acts of Defendants, undertaken without authorization from Plaintiffs and with knowledge that the infringing REELS Mark and Plaintiffs' REELZ® trademarks are likely to be confused, are intended to cause and likely to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether the Defendants' goods and services originate from, or are affiliated with, sponsored by, or endorsed by Plaintiffs, constitute federal unfair competition and trademark infringement in violation of 15 U.S.C. § 1125(a).

74.    The harmful actions of Defendants, if not enjoined, will continue.  Plaintiffs have suffered and will continue to suffer significant damages in an amount to be proven at trial consisting of, among other things, diminution in the value of goodwill associated with the REELZ® trademarks, and injury to Plaintiffs' business and reputation.  Plaintiffs are therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

75.    Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to recover damages in amount to be determined at trial, profits made by Defendants in connection with their infringing activities, and the costs of this action.  Furthermore, the actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiffs to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT III

### *Federal Trademark Dilution under 15 U.S.C. § 1125(c)*

76.    Plaintiffs reallege and incorporate herein the allegations contained in Paragraphs 1 to 75 of this Complaint.

77.    The REELZ® Registrations are famous and highly distinctive, are widely recognized by the general consuming public of the United States as a designation of origin, and are entitled to protection against dilution by blurring or tarnishment.

78.    The foregoing acts of Defendants, and specifically, without limitation, their unauthorized use of the infringing REELS Mark, which is confusingly similar to the REELZ® Registrations, lessen the capacity of the REELZ® trademarks to identify and distinguish Plaintiffs' goods and services, and constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

79.     As a result of Defendants' dilution by blurring of the REELZ® trademarks, Plaintiffs have suffered substantial damages, as well as the continuing loss of the value established by Plaintiffs in their trademarks.  The continuing loss of value cannot be properly calculated and thus constitutes irreparable harm and an injury for which Plaintiffs have no adequate remedy at law.

80.     Plaintiffs will continue to suffer irreparable harm unless this Court enjoins Defendants' dilution by blurring.

## COUNT IV

*Trademark Infringement (Minnesota Common Law)*

81.     Plaintiffs reallege and incorporate herein the allegations contained in Paragraphs 1 to 80 of this Complaint.

82.     The foregoing acts of Defendants, undertaken without authorization from Plaintiffs and with knowledge that REELS and Plaintiffs' REELZ® trademarks substantially identical and are likely to be confused, are intended to cause and likely to cause confusion, mistake, and deception among consumers, the public, and the trade in Minnesota as to whether the Defendants' goods and services originate from, or are affiliated with, sponsored by, or endorsed by Plaintiffs, constitute common law trademark infringement in violation of the common law of the State of Minnesota.

83.     As a direct and proximate result of Defendants' conduct, Plaintiffs have been, and are likely to be, substantially injured in their business including harm to their goodwill and reputation and the significant loss of revenues and profits.

84.     The unauthorized actions of Defendants, if not enjoined, will continue. Plaintiffs have suffered and will continue to suffer significant damages in an amount to be

proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the REELZ® trademarks, and irreparable injury to Plaintiffs' business, such that damages alone cannot fully compensate Plaintiffs for Defendants' misconduct.

85.     Defendants' actions have been willful, subjecting Defendants to all remedies available based on common law trademark infringement.

## COUNT V

### *Violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44*

86.     Plaintiffs reallege and incorporate herein the allegations contained in Paragraphs 1 to 85 of this Complaint.

87.     Defendants have engaged in numerous deceptive trade practices in violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44, including but not limited to:

   a.  Engaging in conduct that causes a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendants' goods and services;

   b.  Engaging in conduct that causes a likelihood of confusion or of misunderstanding as to affiliation, connection, or association between Plaintiffs on the one hand and Defendants on the other hand; and

   c.  Using deceptive representations in connection with Defendants' goods and services, marketed, displayed, distributed, or sold by those defendants.

88.     On information and belief, Defendants are willfully engaged in the above-described trade practices, knowing them to be deceptive.

89.     As a result of Defendants' conduct, Plaintiffs are entitled to an injunction and attorneys' fees under Minn. Stat. § 325D.45.

## COUNT VI

### *Dilution in Violation of Minn. Stat. § 333.285*

90.     Plaintiffs reallege and incorporate herein the allegations contained in Paragraphs 1 to 89 of this Complaint.

91.     Plaintiffs' REELZ® trademarks are distinctive and are famous in Minnesota.

92.     Plaintiffs' REELZ® trademarks became famous in Minnesota prior to Defendants' use of the infringing REELS Mark.

93.     Defendants' use of the infringing REELS Mark has diluted and tarnished and will continue to dilute and tarnish the distinctive quality of the REELZ® trademarks in violation of Minn. Stat. § 333.285

94.     Defendants willfully intended to cause dilution of the REELZ® trademarks.

95.     Defendants have profited and will continue to profit from their unlawful actions and have been and will continue to be unjustly enriched to the detriment of Plaintiffs.  Defendants' acts caused or will cause Plaintiffs monetary damage in an amount presently unknown but to be determined at trial.

96.     Pursuant to Minn. Stat. § 333.285, Plaintiffs are entitled to injunctive relief to prevent further acts to tarnish and dilute the REELZ® trademarks.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment in favor of Plaintiffs and against Defendants on each and every claim of this Complaint, including an Order granting Plaintiffs relief as follows:

A.       For an entry of an Order that Plaintiffs be granted injunctive relief under 15 U.S.C. § 1051 *et seq.* and Minn. Stat. § 325D.45, specifically, that Defendants Instagram, Inc., Instagram, LLC, and Facebook, Inc. and all of their respective officers, agents, servants, representatives, employees, attorneys, and all other persons acting in concert with them be enjoined during the pendency of this action and permanently thereafter from:

1.       Using directly or indirectly, in any manner whatsoever, the infringing REELS Mark, the REELZ® trademarks, or any mark that is confusingly similar to any of the REELZ® trademarks, anywhere in the United States;

2.       Doing any other act or thing calculated or likely to cause confusion or mistake in the trade or the minds of the public, or to deceive consumers into believing that Defendants' goods and services originate with Plaintiffs or are approved, licensed, or otherwise authorized by Plaintiffs, anywhere in the United States;

3.       Registering or prosecuting any application to register REELS, or any mark that is confusingly similar to any of the REELZ® trademarks, as a trademark in the United States;

4.       Engaging in any other activity that constitutes unfair competition with respect to Plaintiffs; and

5.       Aiding, abetting, or assisting any other person or entity in engaging in or performing any activities stated in paragraphs (1)-(4) hereof.

B.      For entry of an order and judgment that Defendant Instagram, LLC's U.S. Trademark Application Serial No. 88925610 is ineligible for registration under 15 U.S.C. § 1052(d);

C.      For entry of an order directing the USPTO not to register said application pursuant to 15 U.S.C. § 1119;

D.      For entry of an order that Plaintiffs be awarded damages pursuant to 15 U.S.C. § 1117, sufficient to compensate it for the significant damage caused by Defendants' willful infringement of Plaintiffs' valuable trademark rights;

E.      For entry of an order that Plaintiffs be awarded Defendants' profits derived by reason of said acts, or as determined by an accounting;

F.      For entry of an order that such damages and profits be trebled and awarded to Plaintiffs and that it be awarded its costs, attorneys' fees and expenses in this suit under 15 U.S.C. § 1117, as a result of Defendants' willful, intentional, and deliberate acts in violation of the Lanham Act;

G.      For entry of an order that Plaintiffs be awarded damages as it has sustained by reason of Defendants' acts of common law trademark infringement and unfair competition, including but not limited to compensatory damages, attorneys' fees, costs and/or punitive damages;

H.      For entry of an order that Plaintiffs be awarded such damages as it has sustained by reason of Defendants' deceptive trade practices, including but not limited to attorneys' fees;

I.      For entry of an order that Plaintiffs be granted prejudgment and post judgment interest;

J.      For entry of an order that Plaintiffs be granted costs associated with the prosecution of this action; and

K.      For entry of an order that Plaintiffs be granted such further relief as the Court may deem just.

Respectfully submitted,

Dated: August 11, 2020

By: */s/ Christopher K. Larus*

Christopher K. Larus (# 0226828)
William E. Manske (#0392348)
George B. Ashenmacher (#0397368)
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
CLarus@RobinsKaplan.com
WManske@RobinsKaplan.com
GAshenmacher@RobinsKaplan.com
Telephone:  (612) 349-0116
Facsimile: (612) 339-4181

Ann K. Ford (DC Bar No. 341479, *pro hac vice* application pending)
Thomas E. Zutic (DC Bar No. 474735, *pro hac vice* application pending)
DLA Piper LLP (US)
500 Eighth Street, NW
Washington, DC 20004
ann.ford@dlapiper.com
thomas.zutic@dlapiper.com
Telephone: (202) 799-4140

Stanley J. Panikowski (CA Bar No. 224232, *pro hac vice* application pending)
DLA Piper LLP (US)
401 B Street, Suite 1700
San Diego, California 92101-4297
stanley.panikowski@us.dlapiper.com
Telephone: (619) 699-2643

Kerry O'Neill (NY Bar No. 5143995 *pro hac vice* application pending)
DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
kerry.oneill@dlapiper.com
Telephone: (212) 335-4682

*Attorneys for Hubbard Media Group, LLC and ReelzChannel, LLC*