UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Hubbard Media Group, LLC and ReelzChannel, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Instagram, Inc., Instagram, LLC, and Facebook, Inc.,<br><br>Defendants. | Case No. 0:20-cv-01750 (DSD/ECW) |

**DECLARATION OF STANLEY E. HUBBARD**
**IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

I, Stanley E. Hubbard, declare that:

1. I am the Chairman and Chief Executive Officer of ReelzChannel, LLC. I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction. I am fully competent to make this declaration, and have personal knowledge of the matters set forth in this declaration.

2. Plaintiffs Hubbard Media Group, LLC and ReelzChannel, LLC are part of the Saint Paul, Minnesota-based family owned and operated Hubbard Broadcasting, Inc. media company ("Hubbard"). Hubbard's media operations date back to 1923, beginning with WAMD ("Where All Minneapolis Dances") radio broadcasts of live dance music and other local programming. Hubbard began television broadcasts in 1948. Hubbard has received a wide array of media industry awards including Marconi, Murrow, DuPont,

1

Peabody and Emmy awards, and several Crystal Awards for outstanding community service. Today, Hubbard employs over 1,800 people across an array of media, content, and entertainment platforms.

3. On September 27, 2006, Plaintiffs launched the REELZ® video entertainment brand. In connection with the REELZ® video entertainment brand, Plaintiffs use the trademarks REELZ®, REELZ NOW®, REELZCHANNEL®, and a host of stylized versions of these trademarks. The REELZ® video entertainment brand offers a variety of original programming including "Hollywood Scandals," "Autopsy: The Last Hours Of…," "Behind Closed Doors with Natalie Morales," "Breaking the Band," "Hollywood 911," and "Copycat Killers." The REELZ® video entertainment brand is one of the last truly independent national voices remaining in today's media landscape, which is now increasingly dominated by corporate giants.

4. Plaintiffs have spent the past 14 years and hundreds of millions of dollars building their REELZ® video entertainment brand. Plaintiffs have directly invested more than $120,000,000 to advertise the REELZ® brand and REELZ® branded video content. Plaintiffs have also expended significant resources promoting the REELZ® brand and associated REELZ® branded video content. For example, Plaintiffs have dedicated a significant amount of on-air time on their own media platforms—time Plaintiffs could have otherwise sold to commercial advertisers for tens of millions of dollars—promoting the REELZ® brand and REELZ® branded video content. Further, the REELZ® brand has been significantly enhanced through deliberate public relations initiatives that have

2

resulted in a tremendous amount of "unpaid media" exposure. As used in this context, "unpaid media" refers to national media exposure that money literally cannot buy. Examples of such "unpaid media" include national magazine covers, interviews and feature stories, and nationally televised interviews, reviews, and news coverage — all of which have played and continue to play a critical role in enhancing the value, visibility, and commercial viability of the REELZ® brand. Plaintiffs estimate that their "unpaid media" has reached over 900 billion individual "impressions" among active and potential consumers of REELZ® branded video content. Plaintiffs estimate an imputed value of over $1 billion in "unpaid media."

5. As a direct result of Plaintiffs' substantial investments in marketing, which include advertising, promotion, and public relations efforts, REELZ® has become a leading brand for independent video content. Today, REELZ® branded video content is distributed on satellite, cable, and telco platforms, and through those distributors has more than 50 million subscribing households across the United States. REELZ® branded video content is also available to tens of millions of consumers on Smart TVs and other Internet-connected devices through linear, subscription, and ad-based video on-demand streaming services.

6. Plaintiffs operate the website <reelz.com>, where REELZ® branded video content and the REELZ® brand are promoted, marketed, and advertised. Plaintiffs also operate the website <reelznow.com>, where REELZ® branded video content is available for streaming.

7. In today's increasingly complicated environment of expanded media options, Plaintiffs continue to invest heavily, by their own standards anyway, to distinguish their distinctive REELZ® media brand and ensure that their valuable brand does not "get lost in the shuffle" now or in the future. The sanctity and continued distinctiveness of the REELZ® brand is critical to the survival of Plaintiffs' REELZ® branded media business.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 1, 2020                              s/ Stanley E. Hubbard
                                                    Stanley E. Hubbard